01
02
03
04
05
06
07
08
09
10
11
12
13
14

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN PHILLIP ANDERSON,              )   Case No. 07-635-JCC-JPD
                                    )
              Petitioner,           )
                                    )
       v.                           )
                                    )   REPORT AND RECOMMENDATION
KAREN BRUNSON,                      )
                                    )
              Respondent.           )
_____)

15             I.  INTRODUCTION AND SUMMARY CONCLUSION

16        Petitioner John Phillip Anderson, proceeding *pro se* and *in forma pauperis*, has filed a

17 28 U.S.C. § 2254 petition for writ of habeas corpus challenging his May 21, 2004 conviction in

18 Snohomish County Superior Court.  Dkt. No. 1.  Respondent has filed an answer opposing the

19 petition, Dkt. No. 10, to which petitioner has replied.  Dkt. No. 13.  After careful

20 consideration of the petition, briefs, governing law, and the balance of the record, the Court

21 recommends that petitioner's § 2254 petition be DENIED and his case be DISMISSED with

22 prejudice.

23                II.  FACTS AND PROCEDURAL HISTORY

24        The facts in this case are sad and disturbing.  Petitioner was involved with a group that

25 called itself the Northwest Mafia.  The group was involved in illegal activity, including stealing

26 drugs from other dealers and selling them.  Petitioner started dating the victim, Rachel

REPORT AND RECOMMENDATION
PAGE – 1

01   Burkheimer, in early 2002.  Their relationship was brief and unstable.

02          In September 2002, Burkheimer invited two members of the group, Kevin "Yusef"

03   Jihad and John Whitaker, to a party at a local motel.  Jihad and Whitaker went to the party, but

04   left shortly thereafter and later told petitioner that they saw individuals at the party whom they

05   thought were rivals and believed they were being set up.  Petitioner and Jihad eventually

06   decided that they needed to scare Burkheimer to send her a message.

07          On September 23, 2002, Burkheimer was at Nathan Lovelace's house with two other

08   members of the Northwest Mafia, Matthew Durham and Maurice Rivas.  Rivas spoke to

09   petitioner and Jihad on the phone and both expressed an interest in seeing Burkheimer.

10   Burkheimer willingly accompanied Durham and Rivas to Jihad's house.

11          Jihad, Whitaker and two other members of the group, Jeffrey Barth and Tony Williams,

12   were at Jihad's house when Burkheimer, Durham and Rivas arrived.  Petitioner was not

13   present when Burkheimer first arrived.  However upon his arrival, petitioner struck

14   Burkheimer in the face and ordered her bound and gagged.

15          Shortly thereafter, Jihad's girlfriend Trissa Conner pulled up in her car.  Jihad told the

16   others to move Burkheimer into the garage.  Petitioner and Whitaker carried Burkheimer into

17   Jihad's garage, where she remained for several hours.  Eventually, Conner looked into the

18   garage and discovered Burkheimer.  Conner threatened to call the police and demanded that

19   everyone leave the residence.  Petitioner and Whitaker put Burkheimer in a duffle bag and

20   loaded her into the back of Durham's car.

21          Petitioner, Durham, Rivas and Whitaker reconvened at Reiter Pit in Gold Bar,

22   Washington.  Petitioner, Rivas and Whitaker dug a shallow grave while Durham remained in

23   the car with Burkheimer.  When the grave was finished, petitioner retrieved Burkheimer from

24   the car and shot her several times as she knelt in the hole.  Whitaker and Rivas helped

25   petitioner fill the hole, returned to Durham's car, and drove away.  Burkheimer's body was

26   discovered approximately two weeks later when Durham directed police to the location at

REPORT AND RECOMMENDATION
PAGE – 2

01  Reiter Pit.

02          On May 21, 2004, a jury convicted petitioner of Aggravated First Degree Murder and

03  Conspiracy to Commit Murder in the First Degree. Dkt. No. 12, Ex. 1 at 1.[1]  Petitioner was

04  sentenced to a mandatory term of life imprisonment without the possibility of parole.  *Id*. at 6.

05          A.      Direct Review

06          Proceeding through appellate counsel, petitioner appealed his conviction to Division

07  One of the Washington Court of Appeals ("Court of Appeals").  On August, 29, 2005, the

08  Court of Appeals affirmed petitioner's conviction in an unpublished opinion.  Dkt. No. 12, Ex.

09  6.  Petitioner subsequently filed a petition for direct review in the Washington Supreme Court

10  ("Supreme Court"), and on May 3, 2006, the Supreme Court denied the petition for review

11  without substantive comment.  Dkt. No. 12, Ex. 7.  On June 20, 2006, the Court of Appeals

12  issued its mandate.  Dkt. No. 12, Ex. 9.

13          B.      Collateral Review

14          On April 26, 2007, petitioner filed the present 28 U.S.C. § 2254 petition for writ of

15  habeas corpus. Dkt. No. 1.  On June 14, 2007, respondent filed her answer and the relevant

16  state court records.  Dkt. Nos. 10-12.  Petitioner's § 2254 petition, the parties' numerous

17  pleadings, and the complete record in this case are now before the Court.

18                          III.  ISSUES PRESENTED

19      Petitioner's § 2254 petition raises two grounds for relief:

20      1.      Was petitioner's Sixth Amendment right to be informed of the state's
                accusations against him violated by not including the elements of the
21              aggravating factors in the charging documents where the defendant was
                charged with Aggravated First Degree Murder?
22
23      2.      Were petitioner's Sixth Amendment due process rights violated when the
                judge refused to present the jury with a lesser-included instruction that the
                jury could find defendant guilty of the lesser offense of First Degree
24              Kidnaping?

25

26  ─────────────────
            [1]  Docket No. 12 comprises the relevant state court record.

    REPORT AND RECOMMENDATION
    PAGE – 3

IV.  DISCUSSION

A.    Standard of Review.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), governs habeas petitions filed by prisoners who were convicted in state courts.  28 U.S.C. § 2254.[2]  AEDPA "demands that state-court decisions be given the benefit of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).  A habeas petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's adjudication is "*contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d) (emphasis added).

Under the "contrary to" clause of AEDPA, a federal habeas court may grant the writ only if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.  *See Williams v. Taylor*, 529 U.S. 362, 389-90 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the petitioner's case.  *Id.*   In addition, a habeas corpus petition may be granted if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).

In *Lockyer v. Andrade*, 538 U.S. 63 (2003), the Supreme Court examined the meaning of the phrase "unreasonable application of law," ultimately correcting an earlier interpretation

---

[2]  In order for a federal district court to review the merits of a § 2254 petition, the petitioner must first exhaust his state court remedies.  28 U.S.C. § 2254(b)(1)(A); *Fields v. Waddington*, 401 F.3d 1018, 1020 (9th Cir. 2005).  Here, the parties do not dispute, and the Court finds, that petitioner fully and fairly exhausted each of his claims pursuant to § 2254(b)(1)(A).  Because each of petitioner's habeas claims were properly exhausted, no procedural bars exist in this case.

REPORT AND RECOMMENDATION
PAGE – 4

01  by the Ninth Circuit which had equated the term with the phrase "clear error."  The Court

02  explained:

> These two standards . . . are not the same.  *The gloss of clear error fails*
> *to give proper deference to state courts by conflating error (even clear error) with*
> *unreasonableness.  It is not enough that a federal habeas court, in its*
> *"independent review of the legal question" is left with a "firm conviction" that*
> *the state court was "erroneous."* . . .  [A] federal habeas court may not issue the
> writ simply because that court concludes in its independent judgment that the
> relevant state-court decision applied clearly established federal law erroneously or
> incorrectly.  Rather, that application must be objectively unreasonable.

*Lockyer*, 538 U.S. at 68-69 (citations omitted, emphasis added).

In sum, the Supreme Court has directed lower federal courts reviewing habeas petitions

to be extremely deferential to state court decisions.  A state court's decision may be

overturned only if the application is "objectively unreasonable."  *Id.*  Whether a state court

adjudication was reasonable depends upon the specificity of the rule:  "the more general the

rule, the more leeway courts have[.]"  *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

B.    The State Court Decisions Rejecting Petitioner's Sixth Amendment Arguments
and Upholding His Conviction Were Neither Contrary To Nor an Unreasonable
Application of Clearly Established Supreme Court Law.

On October 25, 2002, the State of Washington charged petitioner with Aggravated

First Degree Murder and Conspiracy to Commit Murder in the First Degree.

R.C.W. §§ 9A.32.030(1)(a), 10.95.20, 9A.28.040.  Dkt. No. 12, Ex. 11.  The maximum

punishment for Aggravated First Degree Murder is life imprisonment with no possibility of

parole, or death if there are no mitigating circumstances to merit leniency.  R.C.W. §

10.95.030.  The initial information included one aggravating factor: "the murder was

committed in the course of . . . 'Kidnaping in the First Degree.'"  Dkt. No. 12, Ex. 11.  On

July 13, 2003, the State amended the information by adding a second aggravating factor:

"Robbery in the First or Second Degree."  Dkt. No. 12, Ex. 12.  During the trial, the State

filed a "Second Amended Information," which the defense objected to because it was filed

after the petitioner had concluded his case-in-chief.  Dkt. No. 12, Ex. 10.  The second

REPORT AND RECOMMENDATION
PAGE – 5

01  amended information included the aggravating factors from the amended information as well as

02  the elements of those aggravating factors.  *Id.*  The trial court refused to arraign the defendant

03  on the second amended information.  Dkt. No. 12, Ex. 14 at 2180.

04       Over petitioner's objection, the trial judge instructed the jury that if they found

05  petitioner guilty of Murder in the First Degree, they must also determine if the State had

06  proven each aggravating circumstance beyond a reasonable doubt.  Dkt. No. 12, Ex. 13 at 17

07  (Instruction 14).  The jury returned a guilty verdict on Count I and returned a special verdict

08  form wherein they found that the State had proven each of the aggravating circumstances

09  beyond a reasonable doubt.  Dkt. No. 12, Ex. 13 at 33, 34 (A4-211).

10       The Sixth Amendment's Due Process Clause, as applied to the states by the Fourteenth

11  Amendment, requires a state to inform criminal defendants of the nature and cause of all

12  accusations it makes against them.  U.S. Const. amend. VI.  The government may not ambush

13  a defendant by engaging in "affirmatively mislead[ing]" conduct, which prevents him from

14  presenting an adequate defense.  *Sheppard v. Rees*, 909 F.2d 1234, 1236 (9th Cir. 1989).  The

15  principal purpose of the charging documents is to satisfy the constitutional notice requirement

16  by "provid[ing] the defendant with a description of the charges against him in sufficient detail

17  to enable him to prepare his defense."  *James v. Borg*, 24 F.3d 20, 24 (9th Cir. 1994).

18       Petitioner asserts that the charging documents were inadequate because they failed to

19  include each element of each aggravating factor included in Count I: Aggravated First Degree

20  Murder.  Well-settled Washington law requires the state to include all elements of the crime,

21  statutory or otherwise, in the charging documents.  *State v. Kjorsvik*, 117 Wn.2d 93, 97

22  (1991).  The Washington Court of Appeals, however, held that aggravating factors are not

23  elements and therefore denied petitioner's claim.  Dkt. No. 12, Ex. 6 at 10.  The appeals court

24  based its reasoning on *State v. Brett*, 126 Wn.2d 136 (1995).  There, the defendant was

25  charged with aggravated first degree murder, and the information alleged aggravating factors

26  including first degree burglary, robbery, or kidnaping.  *Id.* at 150.  The defendant argued that

REPORT AND RECOMMENDATION
PAGE – 6

the information was insufficient because it did not include the elements of the aggravating factors. *Id*. at 154. The Court held that aggravating circumstances are not elements and ruled against him. *Id*. at 154-55.

Petitioner claims the state courts' conclusion that aggravating factors are not elements of the underlying crime is contrary to the holding of two United States Supreme Court cases: *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Ring v. Arizona*, 536 U.S. 584 (2002).

In *Apprendi*, the Supreme Court ruled that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. In *Ring*, the Supreme Court, quoting *Apprendi*, held that "[b]ecause . . . aggravating factors operate as 'the functional equivalent of an element of a greater offense,' the Sixth Amendment requires that they be found by a jury." *Ring*, 536 U.S. at 609 (citation omitted).

The holding in *Apprendi* was based in part on dicta from *Jones v. United States*, that "under . . . the notice and jury trial guarantees of the Sixth Amendment, any fact (other than a prior conviction) that increases the maximum penalty for a crime must be *charged in an indictment*, submitted to a jury, and proven beyond a reasonable doubt." *Jones v. United States*, 526 U.S. 227, 243 n.6 (1999) (emphasis added). Thus, the petitioner argues that *Ring* and *Apprendi* contain both a notice requirement and a specific jury finding requirement.

However, both *Ring* and *Apprendi* were specifically decided in the context of the Sixth Amendment right to a trial by jury. *See Ring*, 536 U.S. at 584; *Apprendi*, 530 U.S. at 477, n.3. Here, the aggravating factors were submitted to the jury and the jury found that the aggravating factors were present. Dkt. No. 12, Ex. 13. Petitioner raises his *Apprendi* challenge in the Sixth Amendment notice context. The Supreme Court has not applied the *Apprendi* analysis in the notice context. Therefore, no clearly established federal law supports petitioner's assertion. *Crater v. Galaza*, 491 F.3d 1119, 1126 (9th Cir. 2007) ("Under AEDPA we must look to the direct precedent of the Supreme Court of the United States"

REPORT AND RECOMMENDATION
PAGE – 7

when determining "clearly established law.") (quoting *Casey v. Moore*, 386 F.3d 896, 907 (9th Cir. 2004))

Petitioner argues that his constitutional notice guarantee should be treated exactly like the constitutional right to trial by jury. However, determining whether the defendant's jury guarantee was satisfied is straight-forward—questions of fact either were or were not submitted to the jury. Determining whether the government provided the petitioner with adequate notice is not always as easy to decipher. The Ninth Circuit has made it clear that a defendant may receive adequate notice of the accusations against him by means other than the charging document. *See Calderon v. Prunty*, 59 F.2d 1005, 1009-10 (9th Cir. 1995) (explaining that prosecutor's opening statement, hearing on motion for acquittal and evidence introduced may provide defendant with adequate notice); *Morrison v. Estelle*, 981 F.2d 425, 428-29 (9th Cir. 1992) (fair notice was provided by evidence, testimony and requested jury instructions). Therefore, although the Supreme Court held that aggravating factors are the "functional equivalent of elements" in the context of the right to a jury, *see Ring*, 536 U.S. at 609, this language does not translate literally in the context of the Sixth Amendment notice guarantee.

Petitioner cites a Washington state case in support of his argument that each element must be included in the charging documents. *State v. Goodman*, 150 Wn. 2d 774 (2004). In *Goodman*, the defendant was charged with possession of "meth." *Id*. at 412. The term "meth" could be used to describe several controlled substances, the possession of which carried maximum punishments of five years or ten years depending on the substance. *Id*. at 415. Defendant was convicted and sentenced to sixty-five months imprisonment and raised an *Apprendi* challenge on appeal. *Id*. at 412-13. The court agreed with defendant that the charging documents were insufficient because they left out a fact that increased the maximum penalty for the crime beyond the statutory limit. *Id*. Thus, the defendant's maximum possible sentence was very unclear from the face of the information. *Id*.

REPORT AND RECOMMENDATION
PAGE – 8

01   Here, the information and amended information charged the defendant in Count I with

02 Aggravated First Degree Murder and included the aggravating factors of First Degree

03 Kidnaping and Robbery in the First or Second Degree.  The fact that the minimum punishment

04 for Count I was life imprisonment without the possibility for parole was clear from the face of

05 the initial and amended information.  Petitioner made no argument that he was ambushed or

06 intentionally misled by the state.  The Court is not convinced that the notice the State provided

07 to the petitioner was inadequate.  Accordingly, the Court finds that the decision of the

08 Washington Court of Appeals was not contrary to clearly established federal law.

09    C. <u>Petitioner Had No Constitutionally Guaranteed Right to a Lesser-Included</u>

10      <u>Offense Instruction.</u>

11   The Washington Court of Appeals denied petitioner's lesser-included offense claim

12 based on his failure to meet the test set forth in *State v. Harris*, 121 Wn.2d 317 (1993).  The

13 two-part test states that a lesser-included offense is proper where first, each element of the

14 lesser offense is a necessary element of the offense charged, and second, where the evidence

15 supports an inference that the lesser crime was committed.  *Id*. at 320.  The appeals court also

16 cited *State v. Frazier*, 99 Wn.2d 180, 191 (1983), for the proposition that if it is possible to

17 commit the greater offense without committing the lesser offense, the latter is not an included

18 crime.  The court of appeals held that petitioner failed the first part of the test because

19 aggravating factors are not elements, and that even if aggravating factors were elements

20 petitioner would fail under *Frazier*, because it is possible to commit the greater offense,

21 Aggravated First Degree Murder, without committing the lesser, First Degree Kidnaping.

22   The analysis by the Washington Court of Appeals does not fully address petitioner's

23 claim that he has a constitutional right to a lesser-included offense instruction.  Instead, that

24 court's analysis addressed whether or not a lesser-included offense was *proper*.  However, in

25 the context of this habeas petition the Court is limited to determining whether or not petitioner

26 had a constitutional right to a lesser-included offense instruction.

REPORT AND RECOMMENDATION
PAGE – 9

The United States Supreme Court has recognized a constitutional right to a lesser-included offense instruction only where conviction would warrant imposition of the death penalty. *See Hopper v. Evans*, 456 U.S. 605 (1982); *Beck v. Alabama*, 447 U.S. 625 (1980). In *Beck*, the defendant was charged with capital murder and the jury only had two options, either to acquit the defendant or to find him guilty and subject him to the death penalty. *Beck*, 447 U.S. at 638. The Court found that failure to present the jury with an available third-option—a lesser-included offense—when one was available was a violation of due process in the situation where the defendant's life was at stake. *Id.* However, in *Beck* the Supreme Court expressly reserved the issue of whether this right would apply to non-capital murder cases. *Beck*, 447 U.S. at 638 n.7. The Ninth Circuit has repeatedly declined to extend this right to non-capital cases. *See Solis v. Garcia*, 219 F.3d 922 (9th Cir. 2000); *Bashor v. Risley*, 730 F.2d 1228 (9th Cir. 1984).

Here, the jury could have found petitioner guilty of First Degree Murder and acquitted him of Aggravated First Degree murder by finding that the state had failed to prove the aggravating factors beyond a reasonable doubt. In addition, the government did not even seek the death penalty in this case. *See* Dkt. No. 5, Ex. 14 at 2358. The jury was therefore not faced with an all-or-nothing scenario. For this reason, petitioner had no constitutional right to a lesser-included offense instruction.

Although the Washington appellate courts failed to cite or otherwise address the specific holdings in *Hopper* or *Beck*, this does not require reversal. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding ["contrary to" clause's] pitfalls does not require citation of our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."); *Sims v. Rowland*, 414 F.3d 1148, 1152 (9th Cir. 2005) (same).

REPORT AND RECOMMENDATION
PAGE – 10

V.  CONCLUSION

The Washington appellate courts' decisions rejecting petitioner's Sixth Amendment notice claim was not contrary to, nor an unreasonable application of, clearly established federal law as articulated by the United States Supreme Court.   In addition, the petitioner had no constitutionally guaranteed right to a lesser-included offense instruction.  Accordingly, and for the foregoing reasons, the Court recommends that petitioner's § 2254 habeas corpus petition be DENIED and his case DISMISSED with prejudice.  A proposed order accompanies this Report and Recommendation.

DATED this 29th day of November, 2007.

_James P. Donohue_

JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE – 11